## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

JON WALBURG,

                Plaintiff,

v.

                      **MEMORANDUM OF LAW
                      AND ORDER**
                      Civil File No. 25-01594 (MJD/JFD)

BIOTRONIK, INC.,

                Defendant.

Charles N. Nauen, David J. Zoll, Rachel Ann Kitze Collins, Lockridge Grindal Nauen, P.L.L.P., Counsel for Plaintiff.

Andrew J. Pieper, Stoel Rives, L.L.P., Counsel for Defendant.

## I.    INTRODUCTION

This matter is before the Court on Defendant Biotronik's Motion to Transfer Venue or, Alternatively, to Dismiss Without Prejudice.  Biotronik seeks to transfer venue to the District of Oregon pursuant to 28 U.S.C. § 1404(a) or, alternatively, to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that a mandatory forum-selection clause and arbitration agreement render this district an improper forum for this action.

Because "there is uncertainty among courts as to whether a defendant can use [Rule 12(b)(6)] to enforce a forum-selection clause" and because "the Supreme Court strongly suggested that the enforcement of a forum-selection clause falls within the scope of § 1404(a), this Court analyzes the motion under that statute."  Rembrandt Enters., Inc. v. Ill. Union Ins. Co., 129 F. Supp. 3d 782, 784 n.1 (D. Minn. 2015) (citing Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 571 U.S. 49, 60-61 (2013)) (suggesting that motion to transfer under § 1404(a) or forum non conveniens is a better means to enforce a forum-selection clause, and declining to decide whether a Rule 12(b)(6) motion may also be appropriate); City of Benkelman, Neb. v. Baseline Eng'g Corp., 867 F.3d 875, 881 n.6 (8th Cir. 2017) (stating that to the extent defendant sought "to enforce the forum-selection clause . . . [it] should have invoked the forum non conveniens doctrine") (citing Atl. Marine, 571 U.S. at 60). But see United Sugars Corp. v. Tropical Worldwide Corp., No. 13-cv-2718 (ADM/JJG), 2014 WL 1874753, at *6 n.1 (D. Minn. May 9, 2014) (deciding motion to transfer venue under R. 12(b)(6) because Atl. Marine did not "rule out the use of R. 12(b)(6) to achieve this purpose").

## II.    BACKGROUND

### A.    Factual Background

#### 1.    The Parties

Defendant Biotronik is a medical-device company with United States operations based in Lake Oswego, Oregon.  Biotronik "is engaged in the business of marketing and selling cardiac rhythm management devices ['CRMs'] . . . throughout the United States."  (Compl. ¶ 3.)  Biotronik's CRM customers are doctors who implant pacemakers and internal defibrillators.  When a physician needs to implant a CRM device in a patient, the physician contacts a sales representative to assist with the surgical procedure.  (Doc. 8 at 2.)

Plaintiff Jon Walburg began working for Biotronik as an area sales representative in approximately April 2012.  (Id.; Compl. ¶ 7.)   He lived in Minnesota at all times relevant to this case.   (Compl. ¶¶ 1-2.)   In or around October 2018, Walburg was promoted to Regional Sales Director in the Midwest Sales Region.   (Id. ¶ 8; Doc. 8 at 2.)

On May 14, 2020, Walburg executed a new employment agreement ("the Agreement") with Biotronik.  (Doc. 10 (unredacted version of the Agreement)

[hereinafter cited as "Agree."].)    At all times relevant to this motion, the parties'

relationship was governed by the Agreement.

## 2.    The Agreement

The Agreement is governed by Oregon law.  (Id. ¶ 14(7).)  In relevant part,

the Agreement provides the following:

> **Mandatory Arbitration and Exclusive Jurisdiction.  As a condition
> to Employee's Employment, Employee agrees that any and all
> claims, demands, controversies and disputes of any and every
> nature, arising in common law or by state or federal statute, that
> relate in any way whatsoever to Employee's Employment or this
> Agreement against BIOTRONIK . . . shall be exclusively resolved
> by final and binding arbitration to be held only in Portland,
> Oregon. . . .  Before signing this Agreement, Employee agrees that
> Employee has had sufficient opportunity to consult with an
> attorney in order that Employee may intelligently exercise
> Employee's own judgment in deciding whether to sign this
> Agreement.**
> .    .    .
> **As a further condition of Employee's Employment, Employee
> agrees that any and all actions or proceedings relating in any way
> to any provision of this Agreement and/or to the BIOTRONIK
> Parties, to the extent they are not prohibited by this mandatory
> arbitration clause, will be tried and litigated only in the Circuit
> Court of the State of Oregon for the County of Clackamas or the in
> [sic] United States District Court for the District of Oregon (the
> "Courts").  Employee agrees to submit to the exclusive jurisdiction
> of the Courts for the purpose of any such action or proceeding, and
> this submission cannot be revoked.  Employee understands and
> agrees that Employee is surrendering the right to bring litigation
> against  the BIOTRONIK Parties outside the Courts.**

(Id. ¶ 11 (emphasis in original).)

4

Paragraph 6, Consequences of Termination, provides, in pertinent part, the following survival clause:

> Survival of Provisions. The obligations of confidentiality and assignment of inventions under Section (7) and the obligation of non-solicitation and non-competition under Sections (8) and (9) shall survive the termination of this Agreement for any reason.

(Id. ¶ 6(5).)

### 3.    Walburg's Work History and Termination

Walburg was a top-performer at Biotronik during his 13 years with the company. (Compl. ¶ 7.)   However, on January 7, 2025, he was told he was being terminated as part of a Reduction in Force ("RIF"). (Id. ¶ 56.)

Walburg asserts Biotronik terminated him because of his protected activity, including raising concerns about illegal kickbacks to doctors and about Medicare fraud associated with rapid battery depletion in certain cardiac devices. (Id. ¶¶ 34-49, 61.)   He further avers that Biotronik's stated reason for including him in the RIF, failure to meet sales targets, was merely a pretext to retaliate against him for his protected activity because other similarly-situated employees were not selected for termination. (Id. ¶¶ 56-61.)

### B.    Procedural History

On April 2, 2025, Walburg filed a Summons and Complaint in Ramsey County, Minnesota District Court.   The Complaint asserts Retaliation in Violation of Minnesota's Whistleblower Act and Wage Theft in Violation of Minn. Stat. § 181.13.  (Compl. ¶¶ 64-84.)   On April 21, 2025, Biotronik removed the case to this Court.   Biotronik now requests transfer to the District of Oregon.

## III.    DISCUSSION

### A.    Whether the Forum-Selection Clause Survived Termination of the Agreement

The parties dispute whether the forum-selection clause requires transfer of this action or whether, because the forum-selection clause was not included in the enumerated provisions in the survival clause, the forum-selection clause failed to survive Walburg's termination of employment.

Therefore, before the Court can address the transfer issue, it must determine if the forum-selection clause survived termination of the Agreement.

#### 1.    Walberg's Arguments

Walburg argues that once his employment was terminated, so was the forum-selection clause because the parties chose not to include the forum-selection clause in the Agreement's survival clause.   Walburg cites the <u>expressio</u>

6

unius cannon of construction—"the expression of one thing is the exclusion of

another"—to support his argument that the omission of the forum-selection

clause from the survival clause demonstrates an understanding that the forum-

selection clause would not govern the parties' relationship after termination of

Walburg's employment.   (Doc. 13 at 6 (citing 17A C.J.S. Contracts § 432 (Dec.

2024 Update); Winthrop Res. Corp. v. Mackenzie, No. A03-665, 2004 WL 77873, at

*10-11 (Minn. Ct. App. Jan. 20, 2004) (holding that where survival clause in

contract specified that attorneys' fees would be available for certain types of

claims, fees were not available for other claims)).)

Walburg asserts that "multiple courts" have reached the same conclusion.

He relies on TSI USA v. Uber Techs., Inc., wherein the Northern District of Texas

applied California law and found that a broadly-written forum-selection clause

did not survive termination of a contract when the contract's survival clause

enumerated provisions that would "survive any termination" of the agreement,

but did not include the forum-selection clause.   No. 3:16-cv-2177-L, 2017 WL

106835, at *2, *9; see also NuCurrent Inc. v. Samsung Elecs. Co., No. 19cv798

(DLC), 2019 WL 2776950, at *4 (S.D.N.Y. July 2, 2019) (holding that forum-

selection clause did not survive termination of noncompete agreement because

not mentioned as surviving termination when other clauses were so listed);

Junction Sols., LLC v. MBS DEV, Inc., No. 06 C 1632, 2007 WL 114306, at *6 (N.D.

Ill. Jan. 9, 2007) (holding that under Illinois law, an agreement was "most

reasonably interpreted as contemplating the survival only of the provisions of the

Employment Agreement specifically referenced in the Settlement Agreement").

Walburg distinguishes the survival clause here from the clause in Granite

Re, Inc. v. Hutton, a case in which the court held that a forum-selection clause

survived termination of a contract even though the clause was not specifically

included in the contract's survival clause.   No. 19-CV-3074 (PJS/BRT), 2020 WL

4735309, at *1 (D. Minn. Aug. 14, 2020) (citations omitted).   According to

Walburg, the survival clause in Granite Re was written in general terms,

preserving "all representation, warranties and guarantees made in the Contract

documents," id., versus the survival clause here, which only provides for survival

of specific sections of the Agreement.

Walburg further asserts that even courts that hold forum-selection clauses

generally survive contract termination recognize that the parties can "agree

otherwise" and that "explicitly identifying which terms will survive termination

is strong evidence of such an agreement."   (Doc. 13 at 7-8 (citing U.S. Smoke &

Fire Curtain, LLC v. Bradley Lomas Electrolok, Ltd., 612 F. App'x 671, 672-73 (4th

Cir. 2015) (per curiam); NuCurrent, 2019 WL 2776950, at *4).)    He argues that this

is "precisely what happened here, and Biotronik can identify no precedent to the

contrary."    (Id. at 8.)    Therefore, Walburg requests that the Court find that the

forum-selection clause does not apply to his claims.

### 2.    Analysis

"[A] forum selection clause is only enforceable if it is mandatory rather

than permissive." MRP Trading I A, LLC v. Eberhart, 526 F. Supp. 3d 470, 476

(D. Minn. 2021) (citing Dunne v. Libbra, 330 F.3d 1062, 1062–64 (8th Cir. 2003)).

The forum-selection clause in the Agreement is mandatory.    Not only does the

clause state it is "Mandatory," it also uses the words, "any and all claims,

demands, controversies and disputes of any and every nature, arising in common

law or by state or federal statute, that relate in any way whatsoever" to Walburg's

employment or to the Agreement "shall be exclusively resolved by final and

binding arbitration to be held only in Portland, Oregon."    See Dunne, 330 F.3d at

1064 (mandatory forum-selection clauses "use the words 'exclusive,' 'only,'

'must,' or any other terms that might suggest exclusivity"); City of Minneapolis

v. Time Warner Cable, Inc., No. CIV.05-994 ADM/AJB, 2005 WL 3036645, at *5 (D.

Minn. Nov. 10, 2005) (mandatory forum-selection clauses use words such as "exclusive," "sole," or "only").

This broad language also means that the Agreement encompasses the scope and claims of the current litigation because the Agreement applies to "<u>any and all</u> claims, demands, controversies and disputes <u>of any and every nature</u>, arising in <u>common law or by state or federal statute</u>, that relate <u>in any way whatsoever</u> to Employee's Employment or this Agreement against BIOTRONIK. . . ." (Agree. ¶ 11 (emphasis added).)

Moreover, District and persuasive precedent appear to require a finding that the forum-selection clause survived after termination of the Agreement despite not being included in the survival clause.   In <u>Ferguson-Keller Assocs., Inc. v. Plano Molding Co.</u>, the court held that the forum-selection clause in a marketing distribution agreement was valid even after expiration of the agreement.   274 F. Supp. 3d 916, 920 (D. Minn. 2017) (citations omitted).  The court recognized that enforcement of forum-selection clauses is especially important when "the plaintiff's claims involve rights arising out of the expired contract and the entire business relationship between the parties stems from that contract."   <u>Id.</u> (citations omitted & cleaned up).   Here, Walburg's claims all

involve rights arising out of the terminated Agreement and his business relationship with Biotronik.

In addition, contrary to Walburg's representation, Granite Re is instructive. In that case, the court held that while parties' obligations under a contract normally terminate with the contract, "provisions related to the manner in which disputes are resolved generally survive the contract's termination and continue to apply to disputes that accrued before the agreement's termination." 2020 WL 4735309, at *1 (quotation omitted). Therefore, even though the forum-selection clause was not included in the survival clause, it survived termination of the contract. Id. & n.1 (citing Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc., 641 F. App'x 849, 858 (11th Cir. 2016); U.S. Smoke, 612 F. App'x at 672-73 ("Generally, dispute-resolution provisions, such as forum-selection clauses, are enforceable beyond the expiration of the contract if they are otherwise applicable to the disputed issue and the parties have not agreed otherwise."); 13 Arthur L. Corbin & Joseph M. Perillo, Corbin on Contracts § 67.2 ("Although termination and cancellation of an agreement extinguish future obligations of both parties to the agreement, neither termination nor cancellation affect those terms that relate to the . . . forum selection clause[].").

11

Walburg's attempt to distinguish the survival clause in <u>Granite Re</u> from the survival clause in the Agreement is unavailing.   The court's holding in <u>Granite Re</u> had nothing to do with the content of the survival clause, but turned on precedent holding that provisions related to the manner in which disputes are resolved generally survive a contract's termination.  2020 WL 4735309, at *1. Therefore, exclusion of a forum-selection clause from a survival clause does not necessarily mean the clause terminated with the rest of the contract.  And, as discussed above, the forum-selection clause in the Agreement is incredibly broad.  (Agree. ¶ 11.)

Likewise, Walburg's citations to <u>NuCurrent</u> and <u>U.S. Smoke</u> for the proposition that even courts that hold forum-selection clauses generally survive contract termination recognize that parties can agree otherwise is misplaced. Biotronik does not dispute this fact.  Biotronik argues that the parties did not write the forum-selection clause out of existence by writing a separate survival clause to state that different parts of the agreement also survived after termination.  Furthermore, <u>U.S. Smoke</u> held that the forum-selection clause in that case was enforceable because dispute resolution provisions generally

survive contract termination unless the parties agreed otherwise. 612 F. App'x at

673.

Walburg's citation to <u>NuCurrent</u> is also unavailing because <u>NuCurrent</u> was

decided on facts distinguishable from the facts of the instant case. <u>NuCurrent</u>

held that when the parties to a mutual confidentiality agreement ("MCA") that

expired after a year then entered into an NDA that controlled their dealings, the

plaintiff could not rely on NDA language from the expired MCA that provided

for survivability of a forum-selection clause because the parties had not elected

to retain that language in the new NDA. 2019 WL 2776950, at *4. These facts

are clearly distinguishable from the facts of this case. There is no superseding

agreement here, only the one Agreement that contains two clauses that are

arguably at odds. Similarly, <u>Junction Solutions</u> is distinguishable because in that

case, a settlement agreement that included broad language disavowing prior

agreements, promises, and the like, led the court to conclude that the settlement

agreement was most reasonably interpreted as not contemplating survival of a

forum-selection clause included in the parties' prior employment agreement.

2007 WL 114306, at *5-6.

Moreover, Walburg's reliance on <u>TSI</u> is short-sighted because although the

court found that the forum-selection clause in that case did not survive

termination of the parties' contract, it still  transferred the case to the Northern

District of California for forum non conveniens under 28 U.S.C. § 1404(a).  2017

WL 106835, at *9-12; <u>see, also</u>, Part III.B, <u>infra</u> (addressing Biotronik's motion to

transfer venue under 28 U.S.C. § 1404(a)).

Finally, and perhaps, most importantly, it only makes sense to find the

forum-selection clause survived termination because if the Court adopts

Walburg's interpretation of the Agreement, it means that Walburg could breach

the Agreement; immediately terminate the Agreement; and, by doing so, avoid

potential enforcement of the forum-selection clause—something he agreed to—

when Biotronik inevitably sought redress.   This interpretation "distorts the

commonsense meaning of the forum-selection clause and is inconsistent with

traditional principles of contract interpretation."  <u>TriState HVAC Equip., LLP v.</u>

<u>Big Belly Solar, Inc.</u>, 752 F. Supp. 2d 517, 536 (E.D. Pa. 2010), <u>order amended on</u>

<u>reconsid.</u>, 2011 WL 204738 (E.D. Pa. Jan. 21, 2011); <u>see also</u> <u>Silverpop Sys.</u>, 641 F.

App'x at 858 (explaining that structural provisions survive termination of a

contract, as there is "no cogent reason" why parties would choose what law

would apply to disputes during life of the contract but then would have

uncertainty over what law would govern disputes following termination of

contract).

This finding also distinguishes the instant case from <u>Winthrop Resources</u>,

cited by Walburg for the canon of <u>expressio unius</u>.  2004 WL 77873, at *11.   While

Walburg is correct that the court invoked the canon, the <u>Winthrop Resources</u>

court was trying to discern the meaning of a contract provision that enumerated

specific damages that the court found would be available upon remand.  <u>Id.</u>; <u>see

also</u>, <u>Silverpop Sys.</u>, 641 F. App'x at 857 (provisions related to remedies are

structural).  Here, no limitation was put on the structural provisions that would

survive termination of the Agreement.[1]

Therefore, the Court finds that the forum-selection clause found in

Paragraph 11 of the Agreement is mandatory and survived termination of the

Agreement.

---

[1] To the extent Walburg may argue that attorney fee provisions are not structural, the clause at issue in <u>Winthrop Resources</u> is distinguishable from the clause in the Agreement on that basis.  Structural provisions survive contract termination. <u>Granite Re</u>, 2020 WL 4735309, at *1.

**B.    Biotronik's Motion to Transfer Venue Under 28 U.S.C. § 1404(a)**

"When faced with a motion to transfer under § 1404(a), the Court engages

in a three-step inquiry.   First, the Court must determine whether the District

Court of Minnesota is a proper venue, without regard to the forum-selection

clause.   This is because '[s]ection 1404(a) applies only if the initial federal forum

is a proper venue,' pursuant to 28 U.S.C. § 1391."   Mission Techs., Inc. v.

STMicroelectronics, Inc., No. CV 22-2883 (PAM/ECW), 2023 WL 2166773, at *2 (D.

Minn. Feb. 22, 2023) (quoting Alan Wright, et al., 14D Fed. Prac. & Proc. Juris. §

3829 (4th ed.)).   "Second, the Court must determine the validity of the forum-

selection clause. . . .  [T]hird and finally, the Court must weigh a series of

factors to determine the enforceability of the clause."   Id. (quoting Rogovsky

Enter., Inc. v. Masterbrand Cabinets, Inc., 88 F. Supp. 3d 1034, 1040-41 (D. Minn.

2015)).

**1.    Whether the District of Minnesota is a Proper Venue**

Walburg argues that this District is a proper venue for this case.

To begin, there is no doubt that Minnesota courts are competent to

interpret Oregon law, the law that governs the Agreement (Agree. ¶ 14(7)).   See

Atl. Marine, 571 U.S. at 67 ("[F]ederal judges routinely apply the law of a State

16

other than the State in which they sit."). Moreover, Walburg's claims arise under Minnesota law, which this Court is certainly competent to interpret.

At all relevant times, Walburg lived and worked in/out of Minnesota. (Compl. ¶ 1.) Biotronik is a Delaware corporation that has its headquarters in Oswego, Oregon. (Id. ¶ 2; Doc. 1.) Thus, complete diversity of citizenship exists between the parties. 28 U.S.C. § 1332(a)(1),(c)(1).

Walburg only claims damages in an amount in excess of $50,000. However, he claims eight different types of damages. (Compl. ¶¶ 73- 75, 79-83.) Under the totality of the circumstances, a reasonable fact finder could find that Walburg is entitled to over $75,000 in damages should this lawsuit prove successful, which is all that is required under the Rules. See 28 U.S.C. § 1332(a); Kopp v. Kopp, 280 F.3d 883, 885 (8th Cir. 2002) (subject matter jurisdiction "is measured by the amount properly pleaded or as of the time of the suit" and the court can find jurisdiction if it finds a jury could award the statutory minimum based on the information it has at the time) (citation omitted).

Based on these facts, the District of Minnesota is a proper venue for this action, notwithstanding the forum-selection clause.

17

## 2.    Legal Standards for a § 1404(a) Transfer

"[T]he party defying the forum-selection clause . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."   Atl. Marine, 571 U.S. at 63.

> According to 28 U.S.C. § 1404(a), for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.  Although a forum-selection clause does not render venue in a court wrong or improper within the meaning of [28 U.S.C.] § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a).

Rogovsky Enter., 88 F. Supp. 3d at 1040 (quoting Atl. Marine, 571 U.S. at 59) (citations omitted) (brackets in original)).

> In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations.

> The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum.   The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.   For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote the interest of justice, a valid forum-selection clause should be given controlling weight in all but the most exceptional cases.

Atl. Marine, 571 U.S. at 62–63 (citations and quotations omitted)(cleaned up).

The above discussion, of course, presupposes a valid forum-selection clause.  Id. at 62 n.5.   Thus, if Walburg wants to defeat transfer, he must show the forum-selection clause is invalid or that the public interest factors of the § 1404(a) analysis "overwhelmingly disfavor a transfer" such that the Agreement is unenforceable.  Id. at 67.

### 3.    Whether the Forum-Selection Clause is Valid

"Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." M.B. Rests., Inc. v. CKE Rests., Inc., 183 F.3d 750, 752 (8th Cir. 1999).  "A forum-selection clause may be invalid if (1) the clause is the product of fraud or overreaching; (2) a party would be deprived of its day in court if the clause is enforced; or (3) enforcing the clause would contravene the public policy of the forum in which the suit is brought."   Granite Re, Inc. v. N. Lines Cont'ing, Inc., 478 F. Supp. 3d 772, 783 (D. Minn. 2020) (citation omitted) [hereinafter cited as "N. Lines Cont'ing"].

### a)    Fraud or Overreaching

The Court finds that not only is there no evidence of fraud or overreaching, but also that the Agreement provides that Walburg did not sign the Agreement

without having time to consult his own counsel. (Agree. ¶ 11.) Thus, this factor

weighs in favor of finding the clause valid.

### b)    Walburg's Day in Court

The party "seeking to avoid his promise must demonstrate that proceeding

in the contractual forum will be so gravely difficult and inconvenient that he will

for all practical purposes be deprived of his day in court." Servewell Plumbing,

LLC v. Fed. Ins. Co., 439 F.3d 786, 790 (8th Cir. 2006) (quotation omitted). The

Court must not consider personal interests or financial hardships in determining

whether a forum-selection clause governs under a § 1404(a) motion. See, e.g.,

Brown v. Glob. Cashspot Corp., Civil No. 17–1348 (JRT/DTS), 2017 WL 3278938,

at *2 (D. Minn. July 14, 2017) (". . . by agreeing to a forum-selection clause,

[parties] waive the right to challenge the preselected forum as inconvenient or

less convenient for themselves or their witnesses, or for their pursuit of the

litigation. Any inconvenience was 'clearly foreseeable at the time of

contracting.'") (quoting Atl. Marine, 571 U.S. at 64).

The so "gravely difficult" so as to deny a party of his day in court standard

is a high bar that is not generally met because of the cost to litigate in the

disfavored forum. See Servewell Plumbing, 439 F.3d at 790 (holding that "great

expense" of securing witnesses in Ark. for litigation in Fla. fell "well short" of

depriving party of its day in court); M.B. Rests., 183 F.3d at 753 (enforcing forum-

selection clause over objection that party could not afford to litigate in Utah); Sun

World Lines, Ltd. v. Mar. Shipping Corp., 801 F.2d 1066, 1068 (8th Cir. 1986)

(enforcing forum-selection clause requiring Mo. company to litigate in Germany

because "alternative of using depositions of key witnesses provides adequate

opportunity for [plaintiffs] to have their fair day in court"); Brown, 2017 WL

3278938, at *2 (higher cost alleged to litigate in Nev. did not rise to level of

depriving plaintiff of his day in court). But see McDonnell Douglas Corp. v.

Islamic Rep. of Iran, 758 F.2d 341, 345-46 (8th Cir. 1985) (holding chaotic post-

revolutionary conditions in Iran excused enforcement of clause requiring

litigation there).

Walberg asserts that he would have to travel over 1,000 miles to pursue his

claims if the case is transferred.  (Doc. 13 at 9.)  This argument is without merit.

See Servewell Plumbing, 439 F.3d at 790; Sun World Lines, 801 F.2d at 1068;

Brown, 2017 WL 3278938, at *2.  Walburg knowingly submitted to the exclusive

jurisdiction of Oregon.  Walburg will be able to obtain the damages, fees, and

costs he seeks; enforce a judgment; and obtain a fair trial in either forum.   (See

Doc. 8 at 9 n.2 (stating that all types of damages Walburg seeks are available in Oregon).)  This factor weighs in favor of finding the clause valid.

### c)    Contravention of Public Policy

Walburg argues that enforcing the clause would undermine Minnesota public policy.   (Doc. 13 at 8-9.)  He notes that a forum-selection clause may be unenforceable if enforcement "would contravene the public policy of the forum in which suit is brought."  (Id. at 8 (quoting PersaudBramante Apartments, LLC v. Underwriters at Lloyd's of London, 681 F. Supp. 3d 1022, 1031 (D. Minn. 2023) (citation omitted); Harris v. My Credit Guy, L.L.C., 763 F. Supp. 3d 845, 849 (D. Minn. 2025) (recognizing that a "statute or judicial decision reflecting a strong public policy against transferring the case out of Minnesota" could defeat a forum-selection clause).)  Walberg notes that Minnesota recently enacted Minn. Stat. § 181.988 subdivision 3, which is "a clear statement of its public policy disfavoring contractual provisions that would deprive Minnesota-based employees of the protections of Minnesota law and a Minnesota forum for employment-related legal claims."  (Id.)

Walberg states that although Minn. Stat. § 181.988, subdivision 3 appears to void such provisions only in the context of certain claims, "the prohibitory language sweeps much more broadly." (Id. at 8-9.) Walburg then quotes the following language: an employer may not use a contractual provision to "require [an] employee to adjudicate outside of Minnesota a claim arising in Minnesota." § 181.988, subdiv. 3(a)(1). (Id. At 9.) Walburg argues that this is "precisely the situation here." (Id.) He asserts that Biotronik is "attempting to force Walburg-who has lived and worked in Minnesota at all relevant times – to travel over a thousand miles to pursue his claims, presumably because Biotronik feels it will have a more sympathetic audience in Oregon," which is against the public policy expressed in the new statute. (Id.)

First, the Court finds that (1) Minn. Stat. § 181.988 is Minnesota's law on covenants not to compete and therefore has no bearing on the issues in the instant case, and (2) the law only applies to employment agreements entered after July 1, 2023. See Snap Fitness, Inc. v. Scenic City Fitness, Inc., No. 24-CV-2803 (NEB/DTS), 2024 WL 4528877, at *5 n.5 (D. Minn. Oct. 18, 2024).

Second, enforcing the mandatory forum-selection clause in the Agreement when the clause is as prominent as this one (i.e., the second of two paragraphs of

23

bold type with the underlined heading "Mandatory Arbitration and Exclusive Jurisdiction" in the midst of otherwise regular-type paragraphs) and when Walburg was allowed time to confer with his own counsel prior to signing the Agreement, does not contravene Minnesota public policy.  (Agree. ¶ 11.)  "Minnesota courts routinely enforce [forum-selection clauses] and there is no public policy in Minnesota that contravenes the enforcement of such a clause." St. Jude Med. S.C., Inc. v. Suchomel, No. 19-cv-2400 (JRT/BRT), 2020 WL 1853653, at *5 (D. Minn. Apr. 13, 2020) (quoting Airtel Wireless, LLC v. Mont. Elec. Co., Inc., 393 F. Supp. 2d 777, 785 (D. Minn. 2005) (brackets in original).  In fact, enforcing the clause upholds public policy by fulfilling the contracting parties' expectations and by holding parties to their bargains.  See Atl. Marine, 571 U.S. at 66 ("In all but the most unusual cases, . . . the interests of justice is served by holding parties to their bargain.") (cleaned up).

### d)    Conclusion

The Court concludes that the forum-selection clause is valid.

### 4.    Whether the Forum-Selection Clause is Enforceable

Because the forum-selection clause is valid, the Court must only consider the public interest factors to determine if the clause is enforceable.  Atl. Marine,

571 U.S. at 64. The action must be transferred unless Walburg can show that the public interest factors "overwhelmingly disfavor transfer." Id. at 67. The public interest factors will "rarely" overcome a valid forum-selection clause and therefore, "the practical result is that forum-selection clauses should control except in unusual cases." Id. at 64; N. Lines Cont'ing, 478 F. Supp. 3d at 783. The public interest factors the Court must consider are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; and (3) the interest in having the trial of a diversity case in a forum that is at home with the law.[2] Atl. Marine, 571 U.S. at 62 n.6; Rogovsky Enter., 88 F. Supp. 3d at 1043 (same).

Although Walburg cites these factors in his brief, he does not make any arguments related to them. On the other hand, Biotronik first states that the

_____

[2] The Supreme Court noted two adjustments a court must make to its § 1404(a) analysis when an agreement contains a valid forum-selection clause, in addition to ignoring private interest factors: (1) the plaintiff's choice of forum merits no weight and (2) "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public- interest considerations." Atl. Marine, 571 U.S. at 63-64.

25

District of Minnesota has approximately four times the number of case filings per judgeship as the District of Oregon, which means the first factor heavily weighs in favor of transfer. (Doc. 8 at 12 & n.3 (noting that the two districts have the same total number of judges, although the balance between district court judges, senior judges, and magistrate judges is a bit different. There were a total of 9,978 pending civil cases in D. Minn. for the 12- month period ending September 30, 2024 and only 2,320 pending civil cases in D. Oregon for the same time period) (citing U.S. District Courts – Civil Cases Filed, Terminated, and Pending by Jurisdiction, Table C-1, Federal Judicial Caseload Statistics (Sept. 30, 2024), https://www.uscourts.gov/ sites/default/files/2024-12/jb_c1_0930.2024.pdf).)

Second, because the case involves a Minnesota plaintiff and an Oregon defendant, both jurisdictions have an equal interest in the case, making the second factor moot. Third, Biotronik argues that although the Complaint alleges Minnesota statutory claims, "it is unclear at this stage whether, under the applicable choice-of-law rules, Oregon or Minnesota law should apply to Walburg's claims." (Id. at 12.) However, Biotronik acknowledges this is a moot point because it states that "federal judges routinely apply law of States other than the State in which they sit and there is no reason to think there are exceptionally

arcane features of [Minnesota] law that are likely to defy comprehension by a federal judge sitting in [Oregon]." (Id. at 12-13 (quoting Atl. Marine, 571 U.S. at 67-68) (brackets in original) (cleaned up).) Thus, Biotronik argues that Oregon provides "a fully adequate, alternative forum for not only the state claims, but also for the requested relief." (Id. at 13.)

The Court finds that both Oregon and Minnesota have a stake in the outcome of this case because Biotronik is a corporate citizen of Oregon and Walburg is a citizen of Minnesota. The courts of both jurisdictions are competent to apply the laws of the other state. The only evidence before the Court differentiating the two jurisdictions is the 4:1 ratio for civil case loads between the districts. Thus, because Walburg has not shown that the factors "overwhelmingly disfavor transfer," Atl. Marine, 571 U.S. at 67, the forum-selection clause is enforceable.

Therefore, the Court will enforce the forum-selection clause and transfer the case to the District of Oregon.

## IV.   ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

27

1.      Defendant Biotronik's Motion to Transfer Venue or, Alternatively, to Dismiss Without Prejudice **[Doc. 6]** is **GRANTED**;

2.      This case is transferred to the United States District Court for the District of Oregon; and

3.      The Clerk of Court is directed to take all steps necessary to effectuate this transfer in an expeditious fashion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  October 7, 2025                          s/Michael J. Davis
                                                Michael J. Davis
                                                United States District Court